et al. Oral argument as follows, 15 minutes for the petitioner, 15 minutes to be shared by the respondents. Counsel Hawley for the petitioner. May it please the court, I'm here on behalf of Consolidation Coal Company. I would first like to reserve three minutes of my time for rebuttal. This case involves a duplicate claim for survivor's benefits under the Black Lung Act and whether a statutory amendment allows consideration of the duplicate claim. There are two main decisional points that this court needs to address to resolve the issue. First, whether the other circuits' role in the issue of res judicata and subsequent survivor's claims under the ACA got it right. And second, whether the agency's position has created a separation of powers problem. First, the Fourth Circuit's decision in Richards is an incorrect application of the law for three reasons. First, the court failed to apply traditional rules of statutory construction. Second, it failed to apply principles of res judicata correctly. And third, it overextended the regulatory provision by adding a new element that does not exist. First, rules of statutory construction require a court to consider whether Congress has established a pattern or practice of explicitly addressing an issue within a specific statutory framework. Here, Congress has amended the Black Lung Benefits Act four times over the Act's approximately 40-year history. As explained on the chart on page 16 of Console's opening brief, the first three times that the Act was amended, Congress explicitly provided for how previously denied claims were going to be treated. Here, there was no such language. As the Fourth Circuit acknowledged, Congress was silent as to the amendment's effect on previously denied claims. This silence, coupled with the presumption against reopening or re-litigating finally denied claims, is telling. Congress is presumed to know the law and is presumed to know the statutes it has enacted. Under the Act, the pattern and practice of Congress is to explicitly instruct when new amendments are to be applied to previously denied claims. Congress did not provide for the re-adjudication of claims here. In addition to the rules of statutory construction, the Here, there is no such history. There are only the post-passage statements of Senator Byrd, which are not helpful to the Director. The comments? Is this the re-adjudication of a prior claim? Because the new statute, as I understand it, provides for the eligibility of benefits so long as the decedent was eligible for benefits or received benefits from the deceased during their lifetime. And that was not the original claim that was before the Court, and wasn't it slightly different? It was more like a derivative kind of thing at first, right? It was the same claim, Your Honor. Well, how can it be the same claim when this Court has never determined her eligibility for benefits under the current statute? This Court has adopted the Restatements Transactional Test for determining what a new cause of action or a new claim is. And that test is based on the transaction or the key components or operative facts. What the Fourth Circuit did, which I think is what you're asking, is whether the change in law can be a new cause of action. And it cannot. It's not the same legal determination. The issue is not the same. The issue is the same, Your Honor. As this Court held in Vision Processing v. Groves, the issue in Survivors' Claims under the ACA Amendments is whether the minor's death was due to co-worker's pneumoconiosis. But this law doesn't require that connection. Doesn't it say that as long as that person received benefits at any time during that time, now the surviving spouse is entitled to some relief? And we've got a new act here. So you, as Judge Gibbons said, this issue has not been adjudicated. This claim has not been adjudicated under that act. So I think you've got a difference on at least two levels. And I don't think you can just neatly, or I should say, how do you argue that you can neatly compress those and all of a sudden say it's the same thing? Well, first of all, the claims as defined under the regulations is just the form paper that says that there's entitlement to benefits. Those claims are exactly identical. The only thing here, as the Court acknowledged, that has changed is the law. Under traditional rules of... That's a pretty big change, though. And where is it under this law that there's a requirement of a showing of this connection to pneumoconiosis? In Vision Processing v. Groves, which this Court was looking at the issue of whether survivors' claims were applied under the act and the operative dates, the Court said specifically in addressing the statute... I think Judge Donald, and I don't want to state her question for her, but I think she's asking you a question about the statute, not about a case. Well, the Court looked at the statute in Vision Processing v. Groves, and it looked at the inconsistencies in Section 932L, which is where the automatic entitlement provisions come in, and Sections 901, 921A, and 922A. And in resolving the conflicts in the statute from where Congress only amended 932L and did not go back into the other areas of the statute and put in the provisions regarding this derivative entitlement, the Court said that the issue is the same, and that you have to prove death causation. They said the only thing that changed was the method of determining entitlement. I don't understand that, of course. That may be the Fourth Circuit's interpretation. And I was asking you, where was this provision in the statute, where it said that in the statute? Because, I mean, we might... I understand you're arguing that it's the same, but we might look at this and consider that differently. So I want the maximum support for your position. I want you to show me that in the statute, if it exists. Well, the statute says that it applies to all claims. However, it does not say specifically what happens to finally denied claims. And every time Congress has amended the statute to look at the effect of previously denied claims, it has explicitly provided for what is to happen. The transactional test says that the cause of action here is not whether there's a new law. It's whether the issue and the facts have already been adjudicated. Okay. And if the denied claim requires that there be some showing of pneumoconiosis, there's some connection, and the new claim says, I'm claiming benefits because at some point during my deceased spouse's life, he received benefits, and under this law, I'm entitled, how are those equivalent? As the Court acknowledged, it's a new method of showing that the death is due to pneumoconiosis, but it's the same issue. And under the statute, Congress did not provide any grounds for reopening the claim. As Senator Byrd's comments state, the claim is, the statute specifically provided filing for first-time widow's claims and modification. There was never any reference to the refiling of subsequent survivor's claims. Now, the Director's interpretation is that it does apply to subsequent survivor's claims, but the Director can't just add in the retroactivity as far as the reopening of claims, or Congress hasn't specifically provided for it. In addition, the Director's position on retroactivity is completely inconsistent. The Director acknowledges that res judicata applies in the sense that it says, well, res judicata applies for the purposes of determining the onset date or when benefits are to accrue. However, to determine whether the claim is actually precluded, it position as far as that makes absolutely no sense. So either res judicata applies or it doesn't. And here, it doesn't. The claim has already been adjudicated. And returning to the Fourth Circuit's decision there, which I think is what this Court is suggesting, is finding that the change in law constitutes a new cause of action. The Court's decision there only relied on two cases, Maldonado v. U.S. Attorney General and Claude Felter v. Republic of Sudan. Both of those cases, however, are entirely distinguishable. Maldonado is an immigration case involving the Immigration Reform Act of 1996, which is made explicitly applicable to deportation proceedings. Claude Felter arises from the terrorist bombing of the USS Cole off the coast of Yemen. The statutory amendment, the Court said there that the statutory amendment may create a new cause of action where a three-part test is whether there's a substantial public policy concern, whether there are settled expectations of finality, and whether applying res judicata would undermine the Congressional purpose of the statute at issue. That last point here is the most important because Congress was silent as to the preclusive effect of the finally denied claims. And res judicata historically applies to subsequent survivor's claims under the Black Lung Act, as the Supreme  Court has done. If Congress intended for finally denied survivor's claims to be awarded, it would have stated its intent. Now, in addition to the traditional notions of res judicata, this case also presents a separate separation of powers issue, which has not been addressed by the Courts. There's also another case pending, which is Hill, case number 12-4366, which raises the same issues. The Agency's position here would abrogate the final decisions of Article III Courts. Here, Mrs. Maine's initial claim was denied by this Court on July 29, 2009. She instituted this action on December 21, 2010. Platt v. Spenthrift Farm is dispositive. Congress may not reverse a final judicial decision. The Director acknowledges that the separation of powers argument factually applies here, but he attempts to deter the issue by making two points. First, he suggests that only a limited number of cases are affected by the doctrine. And second, he focuses on the administrative origin of the case. Traditional notions of all constitutional provisions apply regardless of whether there's one case at issue or a thousand. So the Director's first point is of no difference. Now, while the Director is correct that there is some case law that res judicata may be relaxed in administrative proceedings, the authority here is irrelevant for two reasons. First, this Court and the Supreme Court have already held that res judicata applies to federal black loan claims. And second, the ACA's effect is not limited to administrative proceedings, as the Court reviewed and finally denied Mrs. Maine's first claim here. In conclusion, Consall respectfully requests that this Court give effect to Congress' silence and find that res judicata bars subsequent survivors' claims from being re-litigated under the ACA. Such a holding would avoid reaching the Constitutional in this case. In the alternative, Consall would request that this Court find that the subsequent claim is barred by principles of separation of powers. Finally, if the Court does not find that the matter is barred by either res judicata or separation of powers, Consall respectfully requests that the date of entitlement for augmentation of benefits selected by the ALJ be reinstated, which was March 2010. And you are? John Grigsby from the Apache Research Defense Fund. Mr. Joyner is more expert in this area than I am, plus he's a better arguer too. So there's two reasons for the time difference. That's fine. I'm used to adjusting to the furniture and the ceilings. I represent Lorene Maines, the claimant in this case, so I know more about her and the situation of the earlier stages of the case probably than Mr. Joyner does. So you may proceed, Mr. Grigsby. We conferred and said you would have your full five minutes. Thank you, Your Honor. As I had said, I represented Lorene Maines prior to her death. She died in 2011, but there are still issues involving back pay, etc., that are involved. I helped her file her claim. Well, I actually didn't help her file her claim, but I got involved in her claim that she filed after her husband's death in 2003. But by the time I got involved, the deposition of her doctor had already been taken by opposing counsel, and of course he said things that if Ms. Maines had an attorney, perhaps he wouldn't have said. And also in the case, she had no money in which to buy a doctor's opinions, and I do that fairly often. Dr. Cohen in Chicago will give you a very good opinion for $1,500. Ms. Maines was on SSI. She had no money with which to buy those opinions. Both sides do it. I'm not sure we're very heartened to hear that. That's the way these cases work, Your Honor. I've done them for 15 years, and it's a doctor buying contest. They buy doctors, we buy doctors. The doctors on the two sides know what they're bought for. You never say, I want a decision in a certain way. You say, I'm representing the claimant, or I'm representing the coal company. They know the answers. These doctors are for sale, so the coal company bought two doctors who never saw the miner, who had 37 years of underground mining experience, and who died from respiratory failure. They bought two doctors to say it had nothing to do with his name. What you're saying is not funny. I mean, I think we're chuckling because it's so unusual for someone to be candid about that, but it'd make me feel a lot better if you referred to it as retained or something. It sounds particularly crass when you say it. I'm sorry. I don't mean it to sound that way. I emphasize to myself so I don't lose all belief in doctors that the vast majority of doctors are taking care of patients and curing them and helping them and not selling their expertise to the highest bidder. That's what I'm saying. They retained a doctor to give an opinion. I'm sorry? Did you just say that the coal company retained two doctors to give opinions or to opine? Let's just not talk anymore about this, if true, unsavory aspect of this process. Okay, the coal company hired two doctors to issue opinions. Those doctors had never met Mr. Maness, and despite his 37 years by stipulation as an underground coal miner and his dying of respiratory failure per his death certificate, those doctors said his death had nothing to do with his coal mining work. It had nothing to do with black lung. So she lost her case. But she lost her case primarily because she didn't have the money to buy Dr. Cohen's opinion or to have an autopsy done, which would have shown, can you imagine what a miner's lungs are like after 37 years underground? So she lost for those reasons, and this is a response to appellant's argument that she had a full and fair hearing in the previous case. She did not have a full and fair hearing. There's nothing fair about losing just because you don't have the money to buy the evidence that you need to buy, and it's legitimate evidence. An autopsy would have been very helpful, but she didn't have the money to do it. In terms of the two specific arguments, and Mr. Jordan will do a much better job of that, I would just refer to my brief primarily. I worked hard and long on that because I care about these cases, because my father was an underground coal miner. But res judicata does not apply in this case. The cases are clear that it's not just the core of operative facts. It's also did the law change, as one of your honors mentioned before. The law changed in a substantial way. Montana versus U.S. says, where the controlling facts or legal principles have changed significantly between the decisions is a crucial factor in res judicata. I couldn't argue with a straight face that this amendment is not a substantial change to the law, and so res judicata just does not apply. Neither does separation of powers, because this is not a retroactive rulemaking by the agency. The agency is not going back and changing these prior cases. Just making a decision on a new case, which is applicable from the time of the decision in the prior case. The prior case is not reopened like under Plout. There's no reversing of the determination that the miner did not die from black lung. There's just a determination that under this new amendment, this widow is entitled to benefits. I think that's the crucial thing. I would again refer the court to my brief for a more detailed argument, and leave the rest of the time to Mr. Joyner. Thank you. Good morning, your honors. My name is Barry Joyner, and I'm here on behalf of the Director of the Office Workers' Compensation Programs. Consolidation coal companies, two primary arguments here are that Mrs. Maine's present claim should be barred by the doctrines of res judicata and separation of powers. Both of those things, I think, however, come down to the question of, is her 2010 subsequent claim something new, or is it a reopening of her prior 2003 claim? I believe for three reasons it is clear that it is a new claim, something different than the old claim, and not a reopening of that claim. First, the 2010 claim is based on a legal theory, a basis of relief that is different from, and could not have been raised at the time of her earlier claim. At the time of her earlier claim, Congress had abolished automatic entitlement for survivors of minors who had received lifetime awards. So at that time, the only way that Mrs. Maine's could receive an award was to prove the cause of her husband's death, to prove that he died due to pneumoconiosis. In 2010, Congress changed the law and created a separate path of entitlement. That is, she can obtain benefits on a, could receive a lifetime award. So that is a different legal theory, a different basis for relief, and one that was not previously available. Second, there's a different factual predicate between the two claims. In Mrs. Maine's first claim, it involved a close examination of medical evidence. Now, I didn't bring the entire file out with me from Washington, but if you look back at that file, it's about this thick. It's full of medical reports and hospital records, doctor's notes, depositions, and then a fairly lengthy ALJ decision summarizing and evaluating all that evidence. In this case, however, in the current claim, the file is about this thick. All there is is a claim that she filed, a minor's death certificate, proof of his lifetime award, and their marriage certificate. And for the record, since the record can't see, the first example you gave was a file that was about, what, 18 to 24 inches in length, and the second one was one that was about, what, half inch? Most of these automatic entitlement claims I've seen, yes, they're mighty small files because there's not a lot of, the issues are simpler to deal with, there are not a lot of issues, there's just not a lot of evidence. So it is different facts, completely different facts, facts that were not relevant at the time of the prior claim. And I, what I was doing was just pointing out to you that this and this, for the record, are the same because it can't see, and I wanted to help you make that record. This is the observation of a seasoned trial judge. I was one too, but I was not as quick on the uptake as Judge Donald. That's correct, Your Honor. Many inches thick of a file on a death to humanity case. I think we've covered it now, so you can carry on. You can go right on. The other point to make, the big difference between the original claim and the subsequent claim, is the length of entitlement that was available. Going back to Mrs. Maness' first claim, she had received an award then. She would have been entitled to benefits from the time of her husband's death in 2003 until he died, a period of about eight years. In contrast, on her current claim, she can only get benefits for 22 months from when the denial of her prior claim became final, or if consolidation is the way, only 17 months, but a much shorter period of time, and a time that only occurs after the denial of her prior claim. Now, I think this reasoning is why the Third and the Fourth Circuits, the Third Circuit in the Marmon-Cole case, the Fourth Circuit in Union-Carbide, both said that subsequent survivor claims under Section 1556 of the Affordable Care Act are new claims and are not reopenings of prior claims. I'd like to take a couple minutes and specifically deal with res judicata. Res judicata, of course, is an affirmative defense and a party asserting it has to establish all the elements of that claim. And I think in looking at those elements, it reinforces the point I was making. In this circuit, there are four elements for res judicata. First, that there was a prior final decision. Second, in a suit involving the same parties, clearly consolidation could meet those elements. But the third element is that the issue presented in the second claim was one that was presented or could have presented, been presented in the prior claim. Consolidation really doesn't talk about that in their opening brief or in their reply brief. And they really can't because the issue in automatic entitlement that is presented in the 2010 claim could not have been presented in the 2003 claim. Finally, the fourth element, which this Court refers to as cause of action, is whether or not the two claims arise out of the same operative facts. And as I've indicated, the second claim here involved different facts. The fact of Mr. Maness's lifetime awards, not the facts of the medical evidence relating to his cause of death. Now, separation of powers, while somewhat different than res judicata, really turns on the same points. Did Congress create something completely new or does the application of Section 1556 require you to go back and reopen the decision that this Court made in 2009? It did not, Congress did not direct the reopening of that decision nor does the application of Section 1556 require that prior decision to be reopened. The denial of that claim remains intact. Nobody is here arguing today that Mrs. Maness's first claim was wrongly decided, in that nobody is saying that this Court reached the wrong decision back then. Given that there are different facts, different legal theory, different periods of entitlement, I think it is clear that the 2010 subsequent claim is a different cause of action, a different claim, something entirely new from what her initial claim was. The final issue raised by Consolidation Coal is whether or not the Benefits Review Board was correct in changing the entitlement date on Mrs. Maness's claim from March of 2010, which was the date that the ALJ used, to October 2009. Now, Consolidation Coal does not actually believe that 2009 is the wrong date. In fact, I believe they concede that under the application of the regulations on entitlement date, that is the correct entitlement date. The ALJ, however, had awarded benefits as of March 2010. Nobody cross-appealed that and the question was whether or not the Board could correct that error in the absence of a cross-appeal. The Board's case law recognizes, as does the case law of this Court in reviewing Board decisions, that there are occasions in which the Board can, sua sponte, address issues and correct mistakes made by ALJs. And I think this is particularly appropriate here. The ALJ, when she issued her decision awarding benefits as of March 2010, at that time there was still some question as to what the entitlement dates on the subsequent claims would be. Subsequently, the Board issued its decision in Richards v. Union Carbide, which was the predecessor of the Fourth Circuit's Union Carbide decision, and clarified that the existing entitlement date rules applied and thus that entitlement on these claims goes back to when the decision on the prior claim became final. It was appropriate for the Board to apply that decision to correct the ALJ's mistaken entitlement date termination. Your Honors, if you have any other questions I'll be happy to try to answer them. Otherwise, I would simply urge the Court to affirm the award of benefits in this case. Did you reserve some rebuttal time, Ms. Hawley? Yes, please. As Director's Counsel noted, under this Court's precedent one of the main issues is whether the issue is the same. In Vision Processing v. Groves, this Court specifically was looking at the ACA amendment's effect on survivors' claims or the derivative survivors' claims. The Court stated, quote, the fact remains that survivors' benefits are paid to the survivors of minors who died due to pneumoconiosis, and the post-2010 amendment simply resurrects a former method for making this showing, end quote. So the only change here is the change in the method. The parties agree that the facts are the same. The only change is the law. So you dispute Mr. Joyner's statement that the statute says claims brought under the 2010 ACA Act constitute new claims? Correct. It's the same claim. And this Court's... No, I'm saying you dispute that that language is in the statute. The language in the statute says all claims, but just because claims can be filed doesn't mean that they're automatically awarded. There's still bars such as statute of limitations, whether or not a widow remarries, whether or not res judicata applies. I was about to say, this would go to your res judicata argument. If I accept his reading of the statute, then it wouldn't constitute res judicata. If I accept yours, I mean, if we accept yours rather, then obviously it would be a different result. The language just doesn't turn on the words all claims. Just because a claim is filed, one doesn't mean that it is going to be amended. The Congress here specifically did not state the fact that the prior claims, prior denials would have. In addition, the claims here are the same. The claims are listed on page 452 and 58. It's simply for purposes of the statute. It's a written assertion of benefits. The claim is the same. The issue is the same. She's making a claim for benefits based on death causation pursuant to this Court's holding in Vision Processing v. Groves. The only thing that has changed is the method. Essentially what Congress has done is created an irrebuttable presumption of death causation, which they've done in other areas, such as findings of complicated co-workers pneumoconiosis. The finding that finally denied claims can be reopened cannot be written into the statute where Congress hasn't specifically stated so. As Director's Counsel stated, if they want such a reading to be put in, they need to go and ask Congress for it, because Congress's pattern and practice here is clear. Where finally denied claims are to be re-adjudicated, the Congress must specifically state so. We know that that's not the case here, because the issue is exactly the same. The only issue here is death causation, and this Court's holding in Vision Processing v. Groves controls that. In conclusion, I would like to respectfully request that this Court hold that res judicata bars the subsequent survivor's claim, or any alternative that the claim is barred by separation of powers. Thank you. I see my time is up. We appreciate the argument all of you have given, and we'll consider the case carefully. Is there no other argued cases? We will adjourn court. You may adjourn.